Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:     702/720-3370
Facsimile:     702/720-3371

*Electronically Filed On: November 4, 2021*

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ARRON AUGUSTIN AFFLALO,<br><br>Debtor. | Case No.  BK-S-19-12086-ABL<br>Chapter 7 |
| SHELLEY D. KROHN, Chapter 7 Trustee,<br><br>Plaintiff,<br>v.<br><br>LAS VEGAS SANDS CORPORATION, a Nevada Corporation; DOE Individuals 1-10; and ROE corporations 1-10,<br><br>Defendants. | Adv. Proc. No.<br><br>**COMPLAINT FOR: (1) AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. § 547; (2) AVOIDANCE OF POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. § 549; AND (3) RECOVERY OF BANKRUPTCY ESTATE PROPERTY PURSUANT TO 11 US.C. § 550**<br><br>Judge: Honorable August B. Landis[1] |

Shelley D. Krohn (alternatively the "Plaintiff" or "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case and plaintiff in the above-captioned adversary proceeding, by and through her counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., complains and alleges the following on information and belief against Las Vegas Sands Corporation (the "Defendant"):

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

### I. JURISDICTIONAL ALLEGATIONS

1. This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.[2]

2. This adversary proceeding arises out of and is related to the above-captioned Chapter 7 case before the United States Bankruptcy Court (the "Bankruptcy Case"). This Court has jurisdiction in the instant adversary proceeding pursuant to 28 U.S.C § 1334 and because the issues raised in the action arise under Sections 547 and 550 of the Bankruptcy Code and relate to the Bankruptcy Case.

3. Venue is proper under 28 U.S.C. § 1409.

4. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O). If this adversary proceeding is determined to be "noncore," Plaintiff consents to the entry of final orders or judgments by the bankruptcy judge.

### II. PARTIES

5. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 4 of the Complaint as though full set forth herein.

6. On April 4, 2019 (the "Petition Date"), Arron Augustin Afflalo (the "Debtor") filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[3]

7. On April 4, 2019, Plaintiff was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case and has served in that capacity since her appointment.

8. Upon information and belief, the Defendant is a Nevada Corporation, and at all times relevant, was licensed to conduct business in the state of Nevada.

9. Upon information and belief, the Defendant conducted business with the Debtor prior to the Petition Date by extending credit and offering hospitality and gaming options.

---

[2] The Plaintiff and the Defendant have entered into a tolling agreement that, as amended, extended the deadline for the Trustee to file a complaint against the Defendant through November 5, 2021.

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

10. The true names, identities, or capacities, whether individual, corporate, political, associate or otherwise of any Doe and Roe Defendants are unknown to Plaintiff. Plaintiff therefore sues and Doe and Roe Defendants by fictitious names. Plaintiff is informed and does believe, and thereupon alleges, that: each of the Doe and Roe Defendants is responsible in some manner for the acts, actions and omissions herein referred to; each of the Doe and Roe Defendants has proximately caused general and special damages to Plaintiff as herein alleged; and Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of any said Doe and Roe Defendants when the same have been ascertained by Plaintiff, together with appropriate charging allegations.

### III.  GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

11. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 10 of the Complaint as though fully set forth herein.

12. Upon information and belief, prior to the filing of the bankruptcy case, the Debtor was employed as a professional basketball player in the National Basketball Association.

13. Upon information and belief, the Debtor commanded a large salary as a professional athlete, earning millions of dollars over his basketball career.

14. Upon information and belief, the Debtor was also a prolific gambler, whose losses frequently far exceeded his winnings.

15. Upon information and belief, the Defendant owned and operated two casinos frequented by the Debtor, the Venetian and the Palazzo.

16. Upon information and belief, the Debtor obtained credit from the Defendant by way of a credit application and credit agreement.

17. Upon information and belief, the Debtor frequently used credit services from the Defendant to gamble, depositing funds with the Defendant that the Defendant would use to offset the Debtor's frequent losses.

18. Upon information and belief, the Defendant also extended credit to the Debtor in the form of casino markers.

. . .

-3-

19. Upon information and belief, casino markers are credit instruments. *See Nguyen v. State,* 116 Nev. 1171, 1172-1173, 14 P.3d 515 (2000).

20. Upon information and belief, the Debtor's gambling was compulsive, and Debtor could not control his gambling addiction. Despite losing large sums to the Defendant, the Debtor continued to gamble.

21. Beginning in 2017, the Debtor's basketball career began to falter. The Debtor accepted a buyout of his player contract from the Sacramento Kings and found it difficult to secure a new contract for employment. The Debtor's income fell drastically, and he was unable to pay his obligations as they came due.

22. Upon information and belief, on or about August 20, 2017, the Debtor withdrew a marker from the Defendant in the amount of $75,000.00. The Debtor did not promptly clear the marker. The Defendant submitted the marker to the Debtor's bank for payment on or about December 28, 2017, and the marker was returned for insufficient funds. Because of the returned maker the Debtor's credit with the Defendant was suspended. The Debtor was unable to clear the marker until March 29, 2018, upon which time the Defendant reinstated the Debtor's credit.

23. Upon information and belief, despite his financial difficulties, the Debtor continued to gamble. The Debtor took out hundreds of thousands of dollars in markers from the Defendant throughout 2017 and 2018.

24. Upon information and belief, the Debtor's financial situation was well known to the Defendant. The Defendant's financial difficulties were public knowledge and were widely reported. Additionally, the Defendant was aware that the Debtor's credit with Defendant had previously been suspended for a bad marker, and the Defendant routinely monitored the reporting of Debtor's balances with other casinos. The Defendant knew or should have known that the Debtor was insolvent or would become insolvent as a result of his continued gambling.

25. Upon information and belief, despite clear evidence of the Debtor's insolvency, the Defendant continued to extend the Debtor credit.

. . .

. . .

-4-

26. Upon information and belief, on or about March 6, 2019, the Debtor made a withdrawal of $125,000.00 from his NBA-NBPA 401(k) Savings Plan, administered by Voya Financial (the "Voya Account").

27. Upon information and belief, on March 11, 2019, the Debtor received a deposit of $100,000.00 in his Chase Private Client Account, ending in 6722 (the "Chase Account") from the Voya Account.

28. Upon information and belief, on March 11, 2019, the Debtor withdrew $90,000.00 from the Chase Account.

29. Upon information and belief, on March 27, 2019, the Debtor received a deposit of $310,894.17 into the Chase Account from the Voya Account.

30. Upon information and belief, on March 27, 2019, the Debtor withdrew $122,500.00 from the Chase Account, and purchased a cashier's check in that same amount.

31. Upon information and belief, on March 27, 2019, the Debtor withdrew $112,500.00 from the Chase Account, and purchased a cashier's check in that same amount.

32. Upon information and belief, on March 27, 2019, the Debtor withdrew $30,000.00 from the Chase Account.

33. Upon information and belief, on March 27, 2019, the Debtor deposited a cashier's check in the amount of $112,500.00 with the Defendant.

34. Upon information and belief, pursuant to the Debtor's bank statements, the only additional deposit received by the Debtor to the Chase Account in March was an interest payment of $.03.

35. Upon information and belief, pursuant to the Debtor's bank statements, the only additional deposit received by the Debtor to the Chase Account in April was an interest payment of $.05.

36. On April 4, 2019 (the "Petition Date"), the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].

37. On April 4, 2019, Plaintiff was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 7].

-5-

38. On June 26, 2020, the Plaintiff filed an *Amended Ex Parte Application For Examination of the Person Most Knowledgeable of Las Vegas Sands Corporation Pursuant To Federal Rule Of Bankruptcy Procedure 2004* [ECF No. 144].

39. On June 26, 2020, the Court entered an *Order Granting Amended Ex Parte Application For Examination of the Person Most Knowledgeable of Las Vegas Sands Corporation Pursuant To Federal Rule Of Bankruptcy Procedure 2004* [ECF No. 146].

40. On June 29, 2020, the Plaintiff filed a *Notice of Subpoena Pursuant to Federal Rule of Civil Procedure 9016 and Federal Rule of Civil Procedure 45 on the Person Most Knowledgeable of Las Vegas Sands Corporation* [ECF No. 152] which provided notice of a subpoena (the "Subpoena) to be served upon the Defendant.

41. Based upon documents produced by the Defendant in response to the Subpoena, Plaintiff identified multiple potential preferential transfers from the Debtor to the Defendant in the ninety days prior to the Petition Date (the "Preferential Transfers"):

| Date of Transfer | Amount |
|---|---|
| April 4, 2019 | $30,000.00 |
| March 27, 2019 | $105,000.00 |
| **Total:** | $135,000.00 |

42. Based upon documents produced by the Defendant in response to the Subpoena, Plaintiff identified a post-petition transfer of estate assets from the Debtor to the Defendant. Specifically, on or about April 9, 2019, the Debtor purchased a slot ticket for $45,000.00 with Venetian Check #62492 that was issued on March 27, 2019 (the "Post-Petition Transfer").

### IV. FIRST CLAIM FOR RELIEF

**(Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547 Against the Defendant)**

43. Plaintiff incorporates and realleges paragraphs 1 through 42, as though fully set forth herein.

44. Within the ninety-day period preceding the Petition Date, the Debtor made or caused to be made the Preferential Transfers to the Defendant, in the form of payment of markers.

45. The Preferential Transfers were transfers of an interest in the Debtor's property—namely, money withdrawn from the Debtor's Chase Account in the form of a Cashier's Check.

46. The Preferential Transfers were to or for the benefit of the Defendant.

47. The Defendant was a creditor of the Debtor on the dates the Preferential Transfers were made.

48. The Preferential Transfers were made for or on account of antecedent debts owed by the Debtor to the Defendant before such Preferential Transfers were made.

49. Pursuant to Section 547(f), the Debtor is presumed to have been insolvent at the time the Preferential Transfers were made.

50. The Debtor was in fact insolvent at the time the Preferential Transfer were made.

51. The Preferential Transfers enabled the Defendant to recover more than the Defendant would have received: (i) in the Debtor's Chapter 7 liquidation; (ii) had the Preferential Transfers not been made; and (iii) the Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

52. The Preferential Transfers are preferential transfers voidable by the Plaintiff pursuant to Section 547(b) of the Bankruptcy Code.

53. Plaintiff has exercised reasonable due diligence and brings this complaint after extensive review of documents provided by the Debtor and by the Defendant, and after consideration of known or knowable affirmative defenses that may be alleged by the Defendant. Plaintiff does not believe such defenses apply as the Preferential Transfers did not involve a contemporaneous exchange for new value, were not made in the ordinary course of the Debtor's business, did not create a security interest, did not give new value to the Debtor, did not create a perfected security interest in inventory or a receivable, did not fix a statutory lien, was not a bona fide payment of a domestic support obligation, and was not of aggregate value of less than $600.00 in the case of an individual with primarily consumer debts or $5,000.00 in the case of an individual debtor whose debts are not primarily consumer debts.

54. Plaintiff believes that the Defendant has engaged in additional preferential transfers and reserves the right to supplement this Complaint to plead additional claims for relief.

-7-

### V.     SECOND CLAIM FOR RELIEF

**(Avoidance of Post-Petition Transfers to 11 U.S.C. 549 Against the Defendant)**

55.     Plaintiff incorporates and realleges paragraphs 1 through 54, as though fully set forth herein.

56.     The Post-Petition Transfer constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

57.     The Post-Petition Transfer occurred after the commencement of the Debtor's bankruptcy case.

58.     The Post-Petition Transfer was not authorized pursuant to any provision of the United States Bankruptcy Court or any order of the Court.

59.     The Post-Petition Transfer is avoidable and can be recovered by Plaintiff pursuant to 11 U.S.C. § 549.

60.     It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

61.     Plaintiff believes that the Defendant has received or engaged in additional post-petition transfers and reserves the right to supplement this Complaint to plead additional claims for relief.

### VIII.    THIRD CLAIM FOR RELIEF

**(Recovery of Transfers Pursuant to 11 U.S.C. § 550 Against the Defendant)**

62.     Plaintiff incorporates and realleges paragraphs 1 through 61 as though fully set forth herein.

63.     The Preferential Transfers are avoidable transfers pursuant to 11 U.S.C. § 547.

64.     The Post-Petition Transfer is an avoidable transfer pursuant to 11 U.S.C. § 549.

65.     Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under Sections 544, 547, 548, or 549 of the Bankruptcy Code, Plaintiff is entitled to recover for the benefit of the estate the property transferred, or the value of the property transferred from the initial transferee of such transfers, or the entity for whose benefit the transfer was made.

66.  The Defendant was the initial transferee of the Preferential Transfers and/or the Post-Petition Transfers (collectively, the "Transfers"), or in the alternative, the Defendant was either the entity for whose benefit the Transfers were made or were the immediate or mediate transferees of the initial transferees receiving the Transfers.

67.  To the extent it is determined that the Defendant is an immediate or mediate transferee of the Transfers, the Defendant did not take for value, in good faith, or without knowledge of the voidability of the Transfer.

68.  The Plaintiff is entitled to a judgment under 11 U.S.C. § 550(a), recovering the Transfers, or the value thereof, for the benefit of the Debtor's bankruptcy estate.

69.  Plaintiff reserves the right to supplement this Complaint to plead additional transfers and claims for relief.

WHEREFORE, Plaintiff prays for relief as follows:

1.  With respect to the first claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Preferential Transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 547.

2.  With respect to the second claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Post-Petition Transfer for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 549.

3.  With respect to the third claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Transfers for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 550.

4.  For attorneys' fees and costs of suit in an amount to be determined in this Adversary Proceeding.

. . .

. . .

. . .

. . .

. . .

5. For such other relief as this Court may deem just and proper.

Dated this 4th day of November, 2021.

                                              **HOUMAND LAW FIRM, LTD.**

By: */s/ Bradley G. Sims*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:   702/720-3370
Facsimile:   702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*